NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 1 2015

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30330 |
| Plaintiff - Appellee, | D.C. No. 3:11-cr-00378-SI-1 |
| v. | |
| MILES J. JULISON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 7, 2015
Portland, Oregon

Before: W. FLETCHER and HURWITZ, Circuit Judges and BAYLSON,[**] Senior
District Judge.

Julison was convicted of multiple counts of making false claims against the

government in violation of 18 U.S.C. § 287. His appeal challenges the district

court's decision not to allow him to proceed *pro se*. We affirm because the district

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Michael M. Baylson, Senior District Judge for the U.S.
District Court for the Eastern District of Pennsylvania, sitting by designation.

court's factual determination that Julison's requests to represent himself were equivocal was not clear error.

## I.

Julison had filed *pro se* two motions prior to arraignment: a "Counterclaim, Motion to Dismiss, and Motion to Strike for Prosecutorial Misconduct" arguing that his prosecution was "vindictive . . . and outrageous government conduct," and a second Motion to Dismiss. At Julison's arraignment, the United States Attorney informed the district court that "Mr. Julison was offered but declined representation . . . from the Federal Public Defender's Office," and "intend[ed] to proceed *pro se*."

The magistrate judge conducted a *Faretta*[1] hearing before taking Julison's plea. The magistrate judge explained to Julison that he had a right to counsel, the penalties associated with the charges in the indictment, and that proceeding *pro se* entailed risks. Julison repeatedly attempted to interrupt the magistrate judge's explanation in order to read statements he had prepared. When the magistrate judge attempted to ascertain whether Julison's waiver was knowing and voluntary by questioning him about his age, education level, and consultations with lawyers other

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

than the public defender, Julison gave nonresponsive answers, asserting that he was "representing the trust" and the "Miles J. Julison Estate." Julison alternately interjected that he wished to "retain all rights" and was "waiving any rights," "benefits," and "privileges," as well as made comments challenging the court's authority. The magistrate judge held that Julison had waived his right to counsel for the purpose of taking his plea, but recommended that the district court revisit the issue.

The district court held a second *Faretta* hearing at the government's request on November 2, 2011. At the outset of the hearing, Julison made a lengthy, confusing statement arguing the court's exercise of jurisdiction violated his rights as a "sovereign" under the Geneva Convention. After the district court instructed Julison on a number of relevant points, it emphasized that if he wished to proceed *pro se*, he "must say so clearly and unequivocally . . . explicitly and without qualifications or reservation"; otherwise, appointed counsel would represent him.

The court then attempted to question Julison about factors bearing on whether his decision to proceed *pro se* was knowing and voluntary, including his level of education, knowledge of the legal system, and use of alcohol or other substances. The court explained twice that if Julison chose not to answer its questions, the court

3

would "take into consideration" his refusal and prohibit him from proceeding *pro se*. Julison then made two lengthy statements challenging the court's authority over him and refused to tell the court his age. The court then twice asked Julison point-blank whether he wished to represent himself. Julison responded, "I do not consent, and I waive all benefits and privileges of this court corporation" and "I am myself. For the record, I am myself, *sui juris*. I stand before me. Do you not see me, Judge?"

The court asked one final time whether Julison would answer its questions, warning him that he would otherwise be denied permission to represent himself. Julison asked the court to "define . . . how you represent yourself." The court explained that representing oneself entails "standing up . . . [and] making all of the important decisions about one's own defense," among other things, and asked if Julison understood. Julison replied, "I don't understand." The court then ruled that Julison could not represent himself. Julison commented, "Which is good. I object, because I am myself." The court appointed a public defender as counsel.

After the *Faretta* hearing, Julison continued to file papers with the court, including one stating that he did not want further contact with his public defender. The court left the public defender's appointment in place unless and until Julison would engage in the required *Faretta* colloquy to ensure any waiver was knowing, intelligent,

4

and voluntary. Julison declined to do so. The court addressed Julison's refusal to cooperate with the public defender at subsequent status conferences, at which Julison asserted he did not understand the proceedings, alternatively invoked and rejected representation, and consistently maintained that he was firing the public defender, the prosecutor, and the judge.

After ordering a competency evaluation, the court concluded that Julison was competent to stand trial. The court again attempted to conduct a *Faretta* colloquy at the competency hearing, instructing Julison that if he continued to refuse representation without sufficiently invoking his right to proceed *pro se*, the public defender would remain his attorney. The court asked several times whether Julison "wish[ed] to voluntarily, knowingly, and unequivocally, waive your right to counsel and to serve as your own attorney," telling Julison that it "will only accept a 'yes' or 'no' answer . . . [u]nless [Julison] ha[d] any questions." Each time, Julison stated he "reserve[d] all [his] rights" and expressed confusion about whether the district court judge was referring to "me, Miles Joseph, bondservant of Jesus Christ . . . . or . . . to the U.S. citizen whoever, Title 18 287." The court held Julison had "not knowingly, voluntarily, and unequivocally waived his right to counsel" and the case proceeded to trial with a federal public defender at the helm.

5

The district court made a final, unsuccessful attempt to complete a *Faretta* colloquy after the jury returned its verdict, but before Julison's sentencing hearing, in response to a motion Julison filed requesting removal of the public defender.

## II.

Whether a defendant validly waived the right to counsel is a mixed question of law and fact subject to *de novo* review. *United States v. Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2004). A trial court's factual findings underlying a waiver determination, including whether a defendant's waiver of counsel was unequivocal, are "reviewed for clear error." *United States v. Mendez-Sanchez*, 563 F.3d 935, 944 (9th Cir. 2009); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).

## III.

In *Faretta v. California*, the Supreme Court held the Sixth Amendment right to counsel not only may be waived, but also "necessarily implies the right of self-representation." 422 U.S. 806, 832 (1975). The Court vacated Faretta's conviction because he had expressed a wish to represent himself "clearly and unequivocally," and he was "literate, competent . . . understanding, and . . . voluntarily exercising his informed free will." *Id.* at 835.

6

A valid request to proceed *pro se* must be "(1) knowing and intelligent, (2) unequivocal, (3) timely, and (4) not for purposes of delay." *United States v. Schaff*, 948 F.2d 501, 503 (9th Cir. 1991). If these elements are satisfied, the request "must be granted so long as it is not made for purposes of delay and the defendant is competent." *United States v. Farias*, 618 F.3d 1049, 1052 (9th Cir. 2010). Julison argues that the district court should not have required answers to specific colloquy questions as a prerequisite to finding that his waiver was knowing, intelligent, or unequivocal.

**IV.**

For a request to proceed *pro se* to be unequivocal, the "defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself." *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994) (citing *Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir. 1989)). Julison never gave a clear, explicit "yes or no" answer when directly asked on multiple occasions whether he wished to proceed *pro se*. He also made repetitive, alternating interjections throughout the proceedings that he "retained" and "waived all rights,"

7

and expressed confusion about what the district court meant by "represent himself," which could have "la[id] the groundwork for a future appeal." *Id.* at 519. The record therefore supports the district court's conclusion that Julison did not unequivocally waive his right to counsel.

**AFFIRMED.**